IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BMO HARRIS BANK N.A. | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CIV-22-298-D |
| B T AUTO TRANSPORT, LLC, A/K/A | ) |
| B T AUTO TRANSPORT, LLC, D/B/A BT | ) |
| EXP GLOBAL SERVICES, WILLIAM | ) |
| TURNER, and SHERI TURNER, | ) |
| | ) |
|     Defendants. | ) |

## **ORDER**

Before the Court is Plaintiff BMO Harris Bank N.A.'s[1] Motion for Default Judgment [Doc. No. 24]. On May 24, 2022, the Court[2] entered default against Defendant Sheri Turner [Doc. No. 6], and, on March 17, 2023, the Court Clerk entered default against Defendants B T Auto Transport, L.L.C. a/k/a B T Auto Transport, L.L.C. d/b/a BT EXP Global Services ("BT Auto") and William Turner [Doc. No. 23]. Defendants have not responded to the Motion. Although duly served with process, Defendants have failed to appear and answer or otherwise respond to the Complaint.

---

[1] On March 22, 2022, GE Capital Commercial Inc. transferred to Plaintiff its "right, title and interest in, to and under" its account with BT Auto. *See* Cert. of Rose Hamilton, Ex. 1 [Doc. No. 24-2] at 10. The transfer was effective as of December 1, 2015. *Id.*

[2] This case was previously assigned to Judge Robin J. Cauthron and was reassigned to the undersigned on December 30, 2022. *See* 12/30/2022 Order [Doc. No. 15].

1

## BACKGROUND

On April 7, 2022, Plaintiff filed the present action alleging BT Auto defaulted on six Loan and Security Agreements by failing to make the minimum monthly payment.[3] Plaintiff also alleges that Sheri Turner and William Turner, as personal guarantors of the debts of BT Auto, have failed to cure BT Auto's default.[4] Plaintiff's claims include three claims for breach of contract—one for the Loan and Security Agreements, one for William Turner's Continuing Guaranty, and one for Sheri Turner's Continuing Guaranty. Compl. [Doc. No. 1] at ¶¶ 48-63. Sheri Turner was served on April 20, 2022. *See* S. Turner Return of Service [Doc. No. 4]. William Turner and BT Auto were served on February 8, 2023. *See* BT Auto Return of Service [Doc. No. 20]; W. Turner Return of Service [Doc. No. 21]. To date, Defendants have neither answered nor otherwise responded to the Complaint.

On May 24, 2022, the Court entered default as to Sheri Turner, and, on March 17, 2023, the Court Clerk entered default as to BT Auto and William Turner. *See* 5/24/2022 Order [Doc. No. 6]; 3/17/2023 Order [Doc. No. 23].[5] Pursuant to FED. R. CIV. P. 55(b)(2),

---

[3] The Security and Loan Agreements are attached to the Complaint [Doc. No. 1], as well as to the Certification of Rose Hamilton [Doc. No. 24-2], as Exhibits 2-7.

[4] William Turner's Continuing Guaranties are attached to the Complaint [Doc. No. 1] as Exhibit 8, and Sheri Turner's Continuing Guaranties are attached as Exhibit 9. The Continuing Guaranties are also attached to the Certification of Rose Hamilton [Doc. No. 24-2] as Exhibits 8 and 9.

[5] As detailed *infra*, Rule 55 sets forth a two-step procedure when seeking a default judgment. First, the Court Clerk must enter default. Fed. R. Civ. P. 55(a). Only then may the Court Clerk or Court enter judgment against that party. Fed. R. Civ. P. 55(b)(1)-(2). Here, Plaintiff sought entry of default as to Defendant Sheri Turner only. *See* [Doc. No. 5]. However, the Court, instead of the Court Clerk, granted Plaintiff's motion and entered "default judgment." *See* [Doc. No. 6]. While the precise procedure set forth in Rule 55 was not followed, the Court finds the failure harmless, specifically because Plaintiff has treated

Plaintiff moves for an entry of default judgment against all Defendants in the amount of $349,558.39.[6]

## STANDARD OF DECISION

The entry of default judgment is committed to the sound discretion of the Court. *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). The Court may consider a variety of factors in the exercise of such discretion, including:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (internal citations omitted).[7] Default judgments are generally disfavored in light of the policy that cases should be decided on their merits whenever reasonably possible. *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991). Nonetheless, default judgment is viewed as a reasonable remedy when the adversary process has been halted because of an essentially unresponsive party. *See id.* at 733.

---

the Court's prior order as to Sheri Turner as one for entry of default and now seeks default judgment against all Defendants.

[6] Plaintiff details each Loan and Security Agreement, as well as the amount owed in the Certification of Rose Hamilton. *See* [Doc. No. 24-2]. Exhibit 10 to the Certification includes the Loan Damage Calculator for each of the six Loan and Security Agreements, which, when added together, shows the $349,558.89 total amount left due. *Id.*, Ex. 10.

[7] "Although the *Ehrenhaus* test was born from a decision to dismiss a case, it is equally applicable to motions for default judgment." *Tom v. S.B., Inc.*, 280 F.R.D. 603, 610 (D.N.M. 2012) (citing *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011)).

**DISCUSSION**

Rule 55 of the Federal Rules of Civil Procedure provides two distinct sequential steps when a defendant fails to answer or otherwise defend against an action: the entry of default and the entry of default judgment. *See* FED. R. CIV. P. 55(a), (b); *Guttman v. Silverberg*, 167 F. App'x 1, 2 n.1 (10th Cir. 2005) ("The entry of default and the entry of a judgment by default are two separate procedures."). Initially, a party must ask the Clerk of Court to enter default. FED. R. CIV. P. 55(a). Only after the Clerk has complied may a party seek default judgment. *Garrett v. Seymour*, 217 F. App'x 835, 838 (10th Cir. 2007) (finding that entry of default is a prerequisite for the entry of a default judgment under Rule 55(b)(1)).

The procedural requirements for a grant of default judgment by the Court are that the application be accompanied by an affidavit in compliance with LCvR55.1, which states "[n]o application for a default judgment shall be entertained absent an affidavit in compliance with the Servicemembers Civil Relief Act, [50 U.S.C. § 3931]." Here, Defendants have failed to answer or plead, default was entered, and Plaintiff has satisfied the Court's procedural requirements. *See* Pl.'s Mot. Def. J., Ex. 3 [Doc. No. 24-3].

Upon an entry of default, the Court takes all of the well-pleaded facts in a complaint as true. *See Tripodi*, 810 F.3d at 765 (noting that after default is entered, "a defendant admits to a complaint's well-pleaded facts and forfeits his or her ability to contest those facts"); *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006) ("'The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is

4

concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'") (citation omitted).

The Court, however, need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages sought. Therefore, before granting a default judgment, the Court must first ascertain whether the uncontested facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *See, e.g., Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274–75 (D. Kan. 2016) ("'Even after default, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment since a party in default does not admit conclusions of law.' . . . Furthermore, a default judgment does not establish the amount of damages. . . . Plaintiff must establish that the amount requested is reasonable under the circumstances.") (internal citations omitted); *Gunawan v. Sake Sushi Restaurant*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("[A] default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. Thus, with respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.").

"'If [a] defendant does not contest the amount prayed for in the complaint [by failing to answer] and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing.'" *Craighead*, 176 F. App'x at 925 (internal citation omitted); *Hunt v. Inter-Globe*

5

*Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985) ("[A] court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation."). Accepting the well-pled allegations in the Complaint as true and for the reasons stated below, the Court finds that the allegations support entry of a default judgment. The amount prayed for in the Complaint—$349,558.89—is a sum certain for the breach of the six Loan and Security Agreements and two Continuing Guaranties plus calculable interest, cost, and attorneys' fees. To demonstrate a breach of contract, Plaintiff must prove "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001).

The Complaint alleges that Defendant BT Auto entered into six Loan and Security Agreements with Plaintiff for the use and/or repair of the equipment set forth in each Agreement. *See* Compl. [Doc. No. 1] ¶¶ 7-41. The basic terms of each Loan and Security Agreement are set forth below, as detailed further in the Certification of Rose Hamilton [Doc. No. 24-2]:

1. Loan and Security Agreement 1: $9,305.30 on February 10, 2015 and a like sum on the like date of each month thereafter until fully paid, along with a pre-computed interest rate of 6.02%. Pl.'s Mot. Def. J., Ex. 2 [Doc. No. 24-2] at 14.[8]

2. Loan and Security Agreement 2: $850.91 on September 10, 2017 and a like sum on the like date of each month thereafter until fully paid, along with a pre-computed interest rate of 8.43%. *Id.* at 24.

---

[8] On or about November 28, 2018, BT Auto and Plaintiff executed a Modification Agreement regarding the payments set forth in Loan and Security Agreement 1. [Doc. No. 24-2 at 3].

   3. Loan and Security Agreement 3: $209.74 on October 1, 2017 and a like sum on the like date of each month thereafter until fully paid, along with a pre-computed interest rate of 8.43%. *Id.* at 30.

   4. Loan and Security Agreement 4: $1,311.90 on October 10, 2017 and a like sum on the like date of each month thereafter until fully paid, along with a pre-computed interest rate of 8.43%. *Id.* at 36.

   5. Loan and Security Agreement 5: $6,609.43 on October 10, 2015 and a like sum on the like date of each month thereafter until fully paid, along with a pre-computed interest rate of 5.99%. *Id.* at 42.[9]

   6. Loan and Security Agreement 6: $2,657.69 on July 10, 2016 and a like sum on the like date of each month thereafter until fully paid, along with a pre-computed interest rate of 6.48%. *Id.* at 51.[10]

Additionally, Defendants William Turner and Sheri Turner each executed a Continuing Guaranty on August 21, 2015. *Id.* at 60, 67. Under the Guaranties, the Turners agreed to the "prompt payment and performance of all obligations, liabilities, and undertakings to [Plaintiff]." Compl. [Doc. No. 1] ¶¶ 43, 46.

Ultimately, BT Auto failed to make its monthly payment under each Loan and Security Agreement, thereby breaching the Agreements. *Id.* at ¶¶ 12, 17, 22, 27, 33, 39. Pursuant to Paragraph 5.1 of each Agreement, an "Event[] of Default" occurred, and in accordance with Paragraph 5.2, Plaintiff accelerated all sums due and owing. *See, e.g.*, Compl., Ex. 2 [Doc. No. 1-2] at 4. Additionally, the Turners, as personal guarantors of the

---

[9] On or about November 28, 2018, BT Auto and Plaintiff executed a Modification Agreement regarding the payments set forth in Loan and Security Agreement 5. Pl.'s Mot. Def. J., Ex. 2 [Doc. No. 24-2] at 47.

[10] On November 28, 2018, BT Auto and Plaintiff executed a Modification Agreement regarding the payments set forth in Loan and Security Agreement 6. Pl.'s Mot. Def. J., Ex. 2 [Doc. No. 24-2] at 56.

debts of BT Auto, have failed to cure the default of BT Auto. Compl. [Doc. No. 1] ¶¶ 44, 47.

Accordingly, it is evident from the record before the Court that six contracts were formed between Plaintiff and BT Auto (the six Loan and Security Agreements) and two between Plaintiff and the Turners (the Continuing Guaranties). BT Auto and the Turners breached their respective contracts, and Plaintiff suffered calculable damages as a direct result of those breaches. Because Defendants have failed to respond or defend this action in any way, the Court finds default judgment is appropriate under the circumstances.

Upon review of the submissions, the Court finds Plaintiff is entitled to contractual damages in the amount of $349,558.89, which includes overdue payments, late charges, and liquidated damages. Plaintiff is further entitled to post-judgment interest as allowed by statute, costs, and reasonable attorneys' fees as may be determined on separate motion by Plaintiff.

## CONCLUSION

Plaintiff's Motion for Default Judgment [Doc. No. 24] is **GRANTED** as set forth herein. A separate Default Judgment shall be issued accordingly.

**IT IS SO ORDERED** this 5th day of September, 2023.

TIMOTHY D. DeGIUSTI
Chief United States District Judge